**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| ERICK THURMAN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 11-CV-070-TCK-TLW |
| | ) |
| TERRY MARTIN, Warden,[1] | ) |
| | ) |
| Respondent. | ) |

**OPINION AND ORDER**

Before the Court is Petitioner's 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. # 1). Respondent filed a response to the petition (Dkt. # 8), and provided the state court records necessary for adjudication of Petitioner's claims (Dkt. # 8, 9, and 10). Petitioner filed a reply (Dkt. # 11). For the reasons discussed below, the Court finds the petition shall be denied.

*BACKGROUND*

On April 13, 2008, at approximately 3 a.m., Jeff Cox was in his truck waiting in the drive through line at a McDonald's restaurant located on 71st Street near Riverside Drive in Tulsa, Oklahoma. He observed a man outside the car in front of him having a conversation with two women in the car. The women were acting defensively and told the man to leave them alone. Mr. Cox yelled at the man to leave them alone. The man walked back to his vehicle. As Mr. Cox stepped out of his truck to put his wallet in his back pocket, he saw the man standing in front of him,

---

[1] In the response to the petition (Dkt. # 8), counsel for Respondent states that the proper respondent in this action is the state officer having present custody of Petitioner. The Court agrees. Petitioner is incarcerated at Dick Conner Correctional Center where Terry Martin is Warden. Therefore, the Clerk of Court shall be directed to substitute Terry Martin, Warden, as party respondent in place of the State of Oklahoma.

by the front tire on the driver's side. Mr. Cox saw the man bring a weapon up and pull the trigger. The first shot fired by the man hit Mr. Cox in the chest. The man proceeded to fire 8 more shots, none of which hit Mr. Cox. Mr. Cox survived the shooting. The shooter was Petitioner Erick Thurman.

Petitioner was arrested and charged with Shooting With Intent to Kill, in Tulsa County District Court, Case No. CF-2008-1759. On March 17, 2009, Petitioner entered a blind plea of guilty to an amended charge of Assault and Battery With a Deadly Weapon. See Dkt. # 10-1, Trans. Plea Hr'g. On April 29, 2009, at the conclusion of a Mitigation/Aggravation Hearing, the trial judge sentenced Petitioner to twenty-five (25) years imprisonment and imposed a $500 fine and a $250 victim compensation assessment. See Dkt. # 10-2, Trans. Sent. Hr'g at 28-29. Petitioner was represented by attorneys Steven Vincent and Paula Keck Moore at both of those hearings.

On May 4, 2009, Petitioner filed a motion to withdraw his plea of guilty. The trial court conducted a hearing on the motion to withdraw on June 3, 2009. See Dkt. # 10-3, Trans. Mot. Withdraw Hr'g. Mr. Vincent and Ms. Moore continued to represent Petitioner at the hearing on his motion to withdraw plea. At the conclusion of the hearing, the trial judge denied the motion to withdraw plea. Id. at 28.

Petitioner filed a petition for writ of certiorari at the Oklahoma Court of Criminal Appeals (OCCA). Represented by attorney Johnny Lombardi, Petitioner raised four (4) propositions of error, as follows:

> Proposition 1: A conflict occurred at the plea withdrawal hearing when the same attorneys who represented the petitioner at his plea and sentencing failed to withdraw from the case and request that the court appoint new counsel for the plea withdrawal hearing.

Proposition 2: Petitioner was denied the effective assistance of counsel throughout the case, in violation of his rights under the 6th and 14th Amendments to the United States Constitution and Art. II, §§ 7 and 20, of the Oklahoma Constitution.

Proposition 3: The trial court abused its discretion in refusing to allow Petitioner to withdraw his plea of guilty on a record that failed to illustrate that his plea was voluntary, knowing and intelligent.

Proposition 4: Mr. Thurman's sentence of twenty-five (25) years in the Oklahoma Department of Corrections with eighty-five (85) percent of that time being mandatory incarceration was excessive and disproportionate in light of the Petitioner's mental health issues and mitigation evidence presented at the sentencing hearing.

(Dkt. # 8, Ex. 1). On April 8, 2010, in an unpublished summary opinion filed in Case No. C-2009-645 (Dkt. # 8, Ex. 3), the OCCA denied the petition.

Next, Petitioner filed an application for post-conviction relief. He raised three propositions of error: (1) ineffective assistance of counsel with regard to Petitioner's motion to withdraw plea, (2) Petitioner's plea was not knowing, voluntary or intelligent, and (3) violation of Petitioner's 6th and 14th Amendment rights. In an amended order, filed October 20, 2010, the trial court denied post-conviction relief. See Dkt. # 11, attached amended order. Petitioner appealed. See Dkt. # 8, Exs. 4 and 5. By order filed January 11, 2011, in Case No. PC-2010-1020, the OCCA affirmed the denial of post-conviction relief. See Dkt. # 8, Ex. 6.

Petitioner filed his federal habeas corpus petition on January 31, 2011 (Dkt. # 1). He identifies three (3) claims: (1) ineffective assistance of counsel with regard to the motion to withdraw plea, (2) his plea of guilty was not voluntary, knowing and intelligent, and (3) Petitioner was denied the effective assistance of counsel throughout his case resulting in an excessive sentence. See Dkt. # 1 at 18-19. In response to the petition, Respondent asserts that Petitioner is not entitled to habeas corpus relief under 28 U.S.C. § 2254(d). See Dkt. # 8.

*ANALYSIS*

**A.     Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b), (c).  See Rose v. Lundy, 455 U.S. 509, 510 (1982). Petitioner fairly presented the substance of his claims to the OCCA on certiorari appeal.  Therefore, the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied.

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing.  See Williams v. Taylor, 529 U.S. 420 (2000).

**B.     Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).  Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing

evidence." 28 U.S.C. § 2254(e)(1). In denying the petition for certiorari, the OCCA adjudicated the issues raised in the habeas petition. Thus, this Court shall review those grounds under § 2254(d).

### 1. Ineffective assistance of counsel (ground 1)

As his first proposition of error, Petitioner argues that his attorney provided ineffective assistance in failing to file a proper written motion for continuance, in failing to investigate his mental illness, in failing to pursue a claim of self-defense, and in failing to call additional witnesses at the hearing on the motion to withdraw his guilty plea. See Dkt. # 1.  Petitioner raised these claims on certiorari appeal. See Dkt. # 8, Ex. 1 at 12.  He also requested leave to supplement the existing appeal record and a hearing on his ineffective assistance of counsel claims, citing Rule 3.11(B)(3)(b), Rules of the Oklahoma Court of Criminal Appeals.  See Dkt. # 8, Ex. 2.  The OCCA rejected the claims, finding as follows:

> The proffered documents about [Petitioner's] history of mental illness, past and present, some of which were given to the trial court at the time of the plea withdrawal hearing, do not establish that Thurman was not acting in a knowing, voluntary, and intelligent manner *at the time he pled guilty*.
>
> Thurman's attorneys were aware of his history of mental illness and a head injury at the time of his plea -- and together sought a continuance on this basis, just before announcing that Thurman had decided to plead guilty. When the trial court questioned if competency was an issue, both attorneys stated that it was not. A short time later, after Thurman had announced his intent to enter a blind plea and submitted his guilty plea form, the trial court carefully questioned Thurman about the medications he was taking, whether they made it difficult for him to understand what was going on, whether his mind was clear, if he was taking all the medications he had been prescribed, whether he was "mentally tuned in well enough to understand" what was happening, whether he understood all of his various rights and had freely chosen to plead guilty, etc.
>
> This Court notes that the record strongly suggests that Thurman's trial attorneys were sincerely attempting to advocate for his best interests at the time of his plea and thereafter.  And none of the materials now proffered could possibly establish that his guilty plea was not properly entered -- particularly since the record so strongly suggests that the medications he was taking at the time of his plea made

> Thurman fully competent and capable of entering a knowing, voluntary, and intelligent plea. Consequently, "**Petitioner's Request to Supplement the Existing Appeal Record and Application for Evidentiary Hearing on Sixth Amendment Claim**," which today is hereby **ACCEPTED FOR FILING**, is hereby also **DENIED**. Furthermore, Thurman has totally failed to establish plain error in regard to any of his ineffective assistance claims. Proposition II is rejected accordingly.

(Dkt. # 8, Ex. 3 at 4-5 (emphases in original) (footnotes omitted)). The OCCA further noted that:

> Appellate counsel, though advocating strenuously on Thurman's behalf, simply cannot show how the now-proffered documents and possible avenues for further defense investigation/strategy establish either (1) that Thurman's plea was invalid or (2) that he was "prejudiced" by the "inadequate performance" of his trial attorneys. In particular, the record does not suggest that Thurman's "self-defense" claim had any potential for success, since there is no evidenced that he could have had a *reasonable* belief the Jeff Cox was a threat to him. *See* OUJI-CR 8-46.

(Id. at 5, n.7 (emphasis in original)).

In Hill v. Lockhart, 474 U.S. 52 (1985), the Supreme Court set out the applicable standard for reviewing ineffective assistance of counsel claims in the context of guilty pleas. In accord with Strickland v. Washington, 466 U.S. 668, 687 (1984), the Court held that a defendant challenging the effective assistance of counsel during the guilty plea process must show that counsel's performance was deficient and that such deficient performance prejudiced him. Hill, 474 U.S. at 57-58. As the Court explained in Hill,

> [I]n the context of guilty pleas, the first half of the Strickland v. Washington test is nothing more than a restatement of the standard of attorney competence . . . . The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Id. at 58-59. However, "a petitioner's 'mere allegation' that he would have insisted on trial but for his counsel's errors, although necessary, is ultimately insufficient to entitle him to relief." Miller v. Champion, 262 F.3d 1066, 1072 (10th Cir. 2001) (quoting Hill, 474 U.S. at 59). Rather, the Court

"look[s] to the factual circumstances surrounding the plea to determine whether the petitioner would have proceeded to trial." Id.

On certiorari appeal, appellate counsel presented constitutional claims of ineffective assistance of counsel and cited the Strickland and Hill standards. See Dkt. # 8, Ex. 1 at 12. In denying relief, the OCCA stated that because Petitioner did not raise the claims in his motion to withdraw plea, the claims would be evaluated for "plain error." See Dkt. # 8, Ex. 3 at 3. Finding no "plain error," the OCCA denied relief. See id. at 4-5. As cited above, the state appellate court also noted, without citing legal authority, that Petitioner had not demonstrated that he suffered "prejudice" as a result of counsels' allegedly "inadequate performance." Id. at n.7. Thus, the OCCA's decision was based on substantive rather than procedural grounds and is properly reviewed under AEDPA standards. Aycox v. Lytle, 196 F.3d 1174, 1177-78 (10th Cir. 1999). Petitioner will not be entitled to habeas corpus relief on his claims of ineffective assistance of counsel unless the OCCA's adjudication was "contrary to, or an unreasonable application of, clearly established Federal law" as determined by the Supreme Court in Strickland and Hill. See 28 U.S.C. § 2254(d).

The record refutes Petitioner's claims that his attorneys provided ineffective assistance during either the change of plea hearing or the hearing on the motion to withdraw plea.[2] First, nothing in the record suggests that Petitioner was prejudiced by counsels' failure to file a written motion for a continuance supported by an affidavit. Even though Mr. Vincent entered his appearance on behalf of Petitioner one day before trial was set to begin, Ms. Moore had provided representation since Petitioner's arrest in April 2008. See Dkt. # 10-1, Trans. Change of Plea Hr'g

---

[2] The Court notes that at the sentencing hearing, Mr. Vincent asked Petitioner "[d]o you feel like I have advocated in your behalf sufficiently?" See Dkt. # 10-2, Trans. Sent. Hr'g at 26. Petitioner responded, "[y]es, sir." Id.

7

at 6. Petitioner has failed to demonstrate that a written motion or an objection would have changed the trial judge's conclusion that counsel for Petitioner had had ample time to develop medical and psychiatric information. Id. at 11. As to Petitioner's claim that his attorneys failed to investigate adequately his mental illness, the record reflects that the trial judge was made aware at the time Petitioner entered his blind plea that Petitioner was mentally ill, had suffered a brain injury, and was taking psychiatric medications. Petitioner fails to identify any aspect of his mental health treatment that would have changed his decision to plead guilty and would have caused him to insist on proceeding to trial had his attorneys investigated more fully. Similarly, Petitioner complains that his attorneys failed to subpoena jail personnel or medical professionals from Tulsa Family and Children's Services to testify at the hearing on the motion to withdraw plea. However, as stated above, the trial judge knew that Petitioner was taking psychiatric medications at the time he entered his plea. Petitioner has again failed to satisfy the prejudice prong of the Strickland standard. Lastly, Petitioner claims that his attorneys provided ineffective assistance in failing to pursue his self-defense strategy. However, he fails to provide any facts, other than his self-serving statement, supporting his claim that he shot Mr. Cox because he felt threatened.

Without more, Petitioner has failed to prove that counsels' performance was constitutionally deficient. See Strickland, 466 U.S. at 696-97 (defendants must overcome the "strong presumption" that particular decisions by counsel can be characterized as sound trial strategy). Counsels' strategic decision to recommend that Petitioner enter a blind plea of guilty was well within the range of reasonable professional assistance. Consequently, the OCCA's rejection of Petitioner's claims of ineffective assistance of counsel was not contrary to, and did not involve an unreasonable application of, Hill and Strickland. Significantly, even if counsel performed deficiently in advising

Petitioner to enter a blind plea, Petitioner does not allege in this habeas action that but for counsel's errors, he would not have entered a blind plea and would have insisted ongoing to trial. Hill, 474 U.S. at 58-59. Accordingly, Petitioner is not entitled to habeas relief on his claims of ineffective assistance of counsel.

### 2. Blind plea of guilty was not voluntarily entered (ground 2)

As his second ground of error, Petitioner claims that his blind plea of guilty was not voluntarily, knowingly, and intelligently entered. See Dkt. # 1. He argues that his plea was involuntary "because he was 'rushed' and 'coerced' into pleading guilty, because his attorneys were not ready to proceed to trial. There is no evidence that Jeff Cox was ever shot in [the] record, or transcripts." See id. at page 18 of 94. In rejecting this claim on certiorari appeal, the OCCA ruled as follows:

> Thurman asserts that his guilty plea was not voluntary, knowing, and intelligent because he was "rushed" and "coerced" into pleading guilty, because his attorneys were not ready to proceed to trial. Unfortunately for Thurman, not[h]ing in the record (beyond the sequence of events itself) suggests that this is what happened. Even at the plea withdrawal hearing, Thurman did not claim that he was rushed or coerced into pleading guilty -- or even that his attorneys were not prepared for a trial. This claim is rejected accordingly.

(Dkt. # 8, Ex. 3 at 5 (footnotes omitted)).

"A defendant's guilty plea must be knowing, voluntary, and intelligent. To enter a plea that is knowing and voluntary, the defendant must have a full understanding of what the plea connotes and of its consequence." See United States v. Hurlich, 293 F.3d 1223, 1230 (10th Cir. 2002) (citations and internal quotation marks omitted). The transcript from the change of plea hearing confirms that, as noted by the OCCA, Petitioner's attorneys both advised the trial judge that Petitioner's competency was not an issue "if only because they have been psychiatrically properly

9

treating him." See Dkt. # 10-1, Trans. Change of Plea Hr'g at 6.  In addition, the trial judge engaged in a colloquy with Petitioner regarding his mental condition and his understanding of the blind plea process.  Id. at 12-14.  The trial judge explained that there was no plea agreement and he carefully advised Petitioner of the range of punishment for the crime, including that the crime of Assault and Battery With a Deadly Weapon carried a sentence of up to life in the penitentiary, up to a $10,000 fine, and that the sentence would be subject to Oklahoma's 85% Rule.  Id. at 14. Petitioner stated under oath at the change of plea hearing that he understood the range of punishment, that he was pleading guilty because he was guilty, and that no one forced him or promised him anything in exchange for his guilty plea.  Id. at 15.  The trial judge repeatedly advised Petitioner that he faced a sentence of up to life imprisonment. Id. 14.  In addition, the trial judge insured at the change of plea hearing that a factual basis for Petitioner's plea existed.  Petitioner affirmed that on April 13, 2008, he had a gun, he shot the gun, and in fact shot Jeff Cox. See id. at 15.  Based on the record cited above, it is clear that Petitioner was fully informed of the consequences of his guilty plea, that he understood that there was no plea agreement and that the trial court could impose a maximum sentence of life imprisonment.

At the hearing on Petitioner's motion to withdraw plea, Petitioner acknowledged that, when he entered his plea of guilty, he testified that he understood what was happening and that he faced a sentence of up to life in prison.  See Dkt. # 10-3, Trans. Mot. Withdraw Plea Hr'g at 4.  However, he further testified that he wanted to withdraw his plea because he "didn't really understand what [he] read." Id. at 6.  At the conclusion of the hearing on the motion to withdraw plea, the trial judge and Petitioner engaged in the following exchange:

| | |
|---|---|
| THE COURT: | Well, the standard that I have to apply, Mr. Thurman, is whether you have established that you knowingly and voluntarily entered your plea. The documentation certainly indicates it, but I rely more on my own memory of what happened, and the transcript, if necessary.<br><br>But in this case, I remember distinctly, and I knew that I asked you if there was anything that you were -- that was -- that you didn't understand. If there was any reason why you were not voluntarily entering into the plea. I told you that you had the right to a jury trial. |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | And that, in fact, we were poised to have the jury brought up and actually go to trial. |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | I did not pressure you, I don't believe, in the slightest, informing you at every step of the way that you had the right to exercise your rights and require the State to prove its case against you.<br><br>I believe with your tenth grade education that there is enough understanding and basic intelligence that makes it clear to me that your plea was knowingly given. I will deny your application to withdraw your plea. And note your exception. |

(Dkt. # 10-3, Trans. Mot. Withdraw Plea Hr'g at 27-28).

That record supports the state courts' factual determination that Petitioner's guilty plea was made voluntarily, knowingly, and intelligently. That factual determination is entitled to a presumption of correctness. See 28 U.S.C. § 2254(e)(1). Petitioner has failed to rebut that presumption with clear and convincing evidence. Id. Therefore, the Court concludes that the OCCA's decision affirming the district court's denial of Petitioner's motion to withdraw his guilty plea was neither contrary to, nor an unreasonable application of Supreme Court law. Petitioner is not entitled to habeas corpus relief on this ground.

### 3. Excessive sentence (ground 3)

As his third proposition of error, Petitioner claims that the ineffectiveness of counsel and the involuntariness of his plea resulted in entry of an excessive and disproportionate sentence in light of Petitioner's mental health issues and mitigation evidence presented at the sentencing hearing. See Dkt. # 1 at page 19 of 94. Upon review of this claim on certiorari appeal, the OCCA determined that:

> Thurman is lucky that his intentional, close-range shooting of Cox did not result in Cox's death and a first-degree murder conviction for himself, with a minimum sentence of life. The sentence Thurman received is not excessive and does not shock the conscience of this Court. There is no plain error, and this claim is rejected accordingly.

(Dkt. # 8, Ex. 3 at 5-6).

The Court has determined above that Petitioner is not entitled to habeas corpus relief on his claims of ineffective assistance of counsel and his challenge to the voluntariness of his guilty plea. Furthermore, a habeas court affords "wide discretion to the state trial court's sentencing decision, and challenges to the decision are not generally constitutionally cognizable, unless it is shown that the sentence imposed is outside the statutory limits or unauthorized by law." Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2000). Federal habeas review generally ends "once we determine the sentence is within the limitation set by statute." Id. In this case, Petitioner faced a sentence of up to life in prison for the crime of Assault and Battery With a Deadly Weapon. See Okla. Stat. tit. 21, § 652(C). Thus, the sentence imposed, twenty-five (25) years in custody, was within the limitations of Oklahoma law. There is no basis for habeas relief.

**C. Certificate of appealability**

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA was debatable amongst jurists of reason. See Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004). The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

## *CONCLUSION*

After careful review of the record in this case, the Court concludes that the Petitioner has not established that he is in custody in violation of the Constitution or laws or treaties of the United States. His petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Clerk of Court shall **substitute** Terry Martin, Warden, as party respondent in place of the State of Oklahoma.

2. The petition for a writ of habeas corpus (Dkt. # 1) is **denied**.

3. A certificate of appealability is **denied**.

4. A separate Judgment shall be entered in this case.

5. The Clerk of Court shall send a copy of this Opinion and Order to the Tenth Circuit Court of Appeals as it relates to Tenth Circuit Case No. 13-5001.

**DATED** this 5th day of February, 2013.

TERENCE C. KERN
UNITED STATES DISTRICT JUDGE